UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NICHOLAS TARSIA, JR.,　　　　　　1:16-cv-3716-NLH

　　　　　Petitioner,　　　　　　**OPINION**

　　　v.

UNITED STATES OF AMERICA,

　　　　　Respondent.

**APPEARANCES:**

NICHOLAS TARSIA, JR.
66211050
FCI MIAMI
P.O. BOX 779800
MIAMI, FLORIDA 33177

　　　*Pro se*

ALISA SHVER
U.S. ATTORNEY'S OFFICE DISTRICT OF NEW JERSEY
401 MARKET STREET, 4TH FLOOR
CAMDEN, NEW JERSEY 08102

　　　*On behalf of Respondent*

**HILLMAN**, District Judge,

　　　This matter comes before the Court on a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 brought by pro se Petitioner Nicholas Tarsia, Jr. [Docket No. 1.] Based on the below analysis, the Court will deny the Motion.

## BACKGROUND

The underlying conviction in this case, which is not challenged by Tarsia, stemmed from Tarsia's involvement in a fraudulent mortgage loans scheme between 2006 and 2008. As part of the scheme, Tarsia "was personally responsible for fraud connected to 17 properties and $5 million in losses." [Docket No. 9, at 3.] On November 6, 2013, Tarsia was charged in a Second Superseding Indictment in this Court with conspiracy to commit laundering, in violation of 18 U.S.C. §§ 371 and 1957. For some time prior to that date, Tarsia attempted to cooperate with the investigation, with the hope that it would result in a reduced sentence. To that end, on February 25, 2011, Tarsia signed a proffer letter from the Government. Tarsia claims that on or about June 28, 2011, his then-attorney Walter Mack told him that he had received a plea agreement and a 5K1.1 letter from the Assistant United States Attorney on the case. But several months after that, Mack allegedly notified Tarsia that the Government was retracting the offer to cooperate because Tarsia had "lied" to the Government.

Tarsia eventually fired Mack after his arraignment because he could no longer afford his fees. He then hired Jeffrey Chabrowe, whose appearance was entered on December 5, 2013. He soon fired Chabrowe as well "for his failure to follow up on

discussions of the plea agreement with" the AUSA.  [Docket No. 1, ¶ 12.]  Soon thereafter, on February 12, 2014, Telesforo Del Valle entered his appearance on Tarsia's behalf.  On February 28, 2014, pursuant to a written plea agreement with the Government, Tarsia pled guilty to a single-count Information charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 371 and 1957.

On June 17, 2015, the Court held a sentencing hearing, at which the Government explained why Tarsia did not receive a cooperation agreement:

> [Y]our Honor, I'd like to discuss Mr. Tarsia's cooperation and to correct the record on a few facts.  Mr. Tarsia attempted to cooperate long before he was indicted in the fall of 2013, he made that attempt to cooperate against Mr. Ricks.  But in order to cooperate you have to do a number of things, the first and most importantly, you have to admit that you engaged in criminal activity yourself.  Secondly you have to listen to the instructions of the agents there telling you the purpose of these activities and socially what you should say, and that is that you should try to elicit from the individual you're cooperating against something that inculpates them in a conspiracy.  Instead, your Honor, the efforts that Mr. Tarsia made were essentially to create a tape that tried to exculpate himself.  And then, thirdly, you have to come to court and you have to enter into an agreement with the government and you have to enter a plea before this Court, none of which was done in this case.

[Docket No. 9, Ex. 3, at 29:19-30:11.]

The Court also summarized the circumstances in the following way:

3

>      And his attempt to cooperate, I do want to take that
>      into account.  But it looks like he was first
>      contacted six years ago by the FBI so he knew about
>      the investigation, that's what it says in the
>      presentence report, anyway.  And it wasn't until after
>      he was actually indicted and arrested that he
>      attempted to cooperate.

[Id., at 19:3-8.]  Del Valle responded by saying, "May I have a moment, your Honor?  Again, I wasn't his lawyer back then." [Id., at 19:9-10.]  Then, after conferring with Tarsia, Del Valle said, "Your Honor is correct." [Id. at 11-12.]

The Court ultimately sentenced Tarsia to a term of 60 months' imprisonment, which was within the Guidelines range. The Court also sentenced Tarsia to three years of supervised release.  Tarsia did not file a direct appeal.  He was released from incarceration on November 5, 2019.  However, he has not yet completed his term of supervised release.[1]

In his Petition, Tarsia claims that several months after his sentencing, he learned the real reason why he did not receive credit for cooperating with the Government.  He claims

---

[1] Although Tarsia has already completed his term of imprisonment, his § 2255 petition is not moot because a period of supervised release still renders Tarsia "'a prisoner in custody' within the meaning of § 2255."  See United States v. Essig, 10 F.3d 968, 970 n.3 (3d Cir. 1993).  Tarsia has apparently failed to keep the Court apprised of his current address in violation of court rules as the current address on the docket is a Bureau of Prisons facility.  The Clerk will be directed to contact the Court's Probation Office in order to determine Tarsia's current address as we remains under Court supervision.

4

to have never been informed as to what the Government thought he had lied about.  He also claims that Mack was "not accurate and misleading" when he stated that the Government had withdrawn its 5K1.1 offer because Tarsia's failure to cooperate.  [Docket No. 1, ¶ 12.]  Tarsia claims that he later learned that "the FBI had not understood why [he] had not signed the 5K1.1 agreement." [Id.]  FBI Special Agent Scott Stefano allegedly stated "that the FBI had wanted [Tarsia's] help in testimony against a South Jersey attorney who was being investigated."  [Id.]  But, according to Tarsia, "the FBI was ultimately required to drop the indictment against the attorney" because Tarsia did not sign and return the cooperation agreement.  [Id.]  In fact, Tarsia was eager to give such testimony, but Mack "never indicated to [Tarsia] that the FBI was requesting testimony from me against someone else."  [Id.]  Nor, according to Tarsia, did Mack share "any conversations that he had regarding this proposed testimony, either with the FBI, the South Jersey attorney, or anyone else; nor whether he even had any such conversations." [Id.]

   Based on those allegations, Tarsia argues that Mack failed to effectively represent him, thereby denying him "the opportunity to enter into the [5K1.1] agreement, to provide testimony at the request of the Government, and obtain a

5

possible reduction in [his] sentence by reason of substantial assistance." [Id.]  Mack's alleged ineffectiveness is Tarsia's sole basis for relief under § 2255.  For the reasons expressed below, the Court will deny the Motion.

## DISCUSSION

### A.  Jurisdiction

The Court exercises jurisdiction over this case pursuant to 28 U.S.C. § 2255(f)(1), since Tarsia filed his Motion within one year of the date on which his judgment of conviction became final.  See 28 U.S.C. § 2255(f)(1).

### B.  Evidentiary Hearing

A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief.  Id. § 2255(b); see also United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).  In this case, the record conclusively demonstrates that Tarsia is not entitled to relief.  Therefore, an evidentiary hearing is not necessary.

### C.  Ineffective Assistance of Counsel

Under Strickland v. Washington, a claim of ineffective assistance of counsel requires a petitioner to show that (1) defense counsel's performance was deficient and (2) the deficiency actually prejudiced the petitioner.  466 U.S. 668,

6

687 (1984).  Here, the Government argues that Tarsia has failed to meet both of those prongs.  [See Docket No. 9, at 7-12.]  The Court agrees that Tarsia fails to meet the first Strickland prong.  Therefore, the Court need not address the second prong, and it will deny Tarsia's Motion.

### 1.   Deficient Performance

The first Strickland prong is satisfied if defense counsel made errors that were serious enough such that counsel was not functioning as the "counsel" that the Sixth Amendment guarantees.  Id.  This is a high standard, especially given the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  A court must be "highly deferential" to a defense counsel's decisions and should not "second-guess counsel's assistance after conviction."  Strickland, 466 U.S. at 689; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996).

The Court finds that Tarsia has not satisfied this requirement.  Tarsia's allegations about Mack's deficient performance are self-serving and directly contradict the evidence presented during the sentencing hearing.  Tarsia claims that the Government was "confused" as to why he had never signed the cooperation agreement, when in fact all parties agreed that

7

it was because of Tarsia's own behavior that the offer was rescinded. In fact, he agreed, by way of his attorney, with the Government's and the Court's recitation of the facts, which plainly indicated that the reason Tarsia did not receive a cooperation agreement was because he used the opportunity to cooperate to instead "create a tape that tried to exculpate himself." [Docket No. 9, at 9.]

In other words, it was Tarsia, who in the view of the Government attempted to falsely minimize his own conduct, that squandered his opportunity for a cooperation agreement, not Mack. Because of Tarsia's conduct, the Government decided not to make a 5K1.1 motion on his behalf, a decision that the Government had almost unilateral and unreviewable authority to make here.[2]  See Wade v. United States, 504 U.S. 181, 185-86 (1992). Mack did not err in obtaining the cooperation agreement, and his performance was not deficient. Therefore, Tarsia cannot satisfy the first Strickland prong, and his Motion

---

[2] In general, the Court will not review the Government's decision not to make a 5K1.1 (substantial assistance) motion on Tarsia's behalf. "[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy [only] if they find that the refusal was based on an unconstitutional motive." Wade, 504 U.S. at 185-86. Tarsia makes no argument that the Government acted with an unconstitutional motive. Therefore, the Government's decision not to make a 5K1.1 motion is unreviewable here.

will be dismissed.

**D.   Certificate of Appealability**

A petitioner may not appeal a final order in a § 2255 proceeding to the court of appeals unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court will not grant a certificate of appealability here because jurists of reason would not find it debatable that Tarsia has failed to make a substantial showing of the denial of a constitutional right.

## CONCLUSION

For the reasons expressed above, the Court will deny Tarsia's motion to correct, vacate, or set aside his federal conviction.  No certificate of appealability shall issue.  An accompanying Order will be entered.


April 27, 2020                          s/Noel L. Hillman
DATE                                    NOEL L. HILLMAN, U.S.D.J.